NLF

FILED

MAR 0 2 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GMAC REAL ESTATE, LLC,                    )
                                          )
                        Plaintiff,        )       Case No. 05 C 0573
                                          )
            v.                            )       Judge Ruben Castillo
                                          )
COSTELLO REALTY, INC.,                    )
                                          )
                        Defendant.        )

## DEFENDANT'S MEMORANDUM IN SUPPORT
## OF DEFENDANT'S MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION

Costello Realty, Inc. respectfully submits this Memorandum in Support of Defendant's

Motion to Dismiss for Lack of Personal Jurisdiction.

**FACTS:**

The instant Complaint (Exhibit 1) arises from a contract between GMAC Home Services,

Inc. (hereinafter "GMAC") a Delaware corporation, and Richard F. Costello Realty, Inc.

(hereinafter "Costello"), a Massachusetts corporation.  The contract calls for GMAC to allow

Costello the use of logos or trademarks (hereinafter "Marks") in connection with its real estate

broker's business located in Franklin, Massachusetts.

The contract authorized Costello the use of the "Marks" in a defined licensed territory,

that being Eastern Massachusetts.  (Exhibit A (Contract) to Exhibit 1 (Complaint) at p. 3.)

Costello is a licensed real estate broker in the Commonwealth of Massachusetts.  (Exhibit

2, ¶3.)

Costello is not licensed by the State of Illinois as a real estate broker, and has never

conducted any business in the State of Illinois.  *Id.*

On April 25, 2000, an amendment to the contract was executed by Costello and GMAC Real Estate, LLC d/b/a GMAC Real Estate with a place of business at 477 Martinsville Road, Liberty Corner, New Jersey. (Exhibit B (Contract Amendment) to Exhibit 1 (Complaint).)

The contract includes a choice of laws provision, by which the parties agree that the contract shall be construed in "...accordance with the laws of the state in which the affiliate is licensed to use the Marks." (Exhibit A (Contract) to Exhibit 1 (Complaint) p. 21.)

The contract does not provide any stipulation or waiver relative to jurisdiction, and a review of the contract establishes that there is not a single reference to the State of Illinois.

**ARGUMENT**

THE COURT LACKS PERSONAL JURISDICTION OF THE DEFENDANT, COSTELLO REALTY, INC., AS ANY EXERCISE OF PERSONAL JURISDICTION VIOLATES THE DEFENDANT'S RIGHT TO DUE PROCESS AS GUARANTEED BY THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES

It is well-settled that the decision to exercise personal jurisdiction is a question of law based on the Due Process Clause of the Constitution. Tobin v. Astra Pharmaceutical Products, Inc., 993 F. 2d 528 (6th Cir. 1993), citing Burger King Corp. v. Rudewicz, 471 U.S. 462 (1985).

In Bridgeport Music v. Still N The Water Publishing, 327 F. 3rd 472 (6th Cir. 2003), the Sixth Circuit Court of Appeals held that specific personal jurisdiction is proper over a defendant only if their contract satisfies the three part test established in Southern Machine Company v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968).

"First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise

from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.  Southern Machine Company v. Mohasco Industries, Inc., 401 F. 2d 374, 381 (6th Cir. 1968) (emphasis added).

With regard to the first prong, "The purposeful availment requirement is satisfied when the defendant's contacts with the forum state 'proximately result from actions by the defendant himself that create a substantial connection with the State, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there."  Bridgeport Music v. Still N The Water Publishing, 327 F. 3d at 478, quoting Compuserve, Inc. v. Patterson, 89 F. 3d 1257, 1263 (6th Cir. 1996) quoting Burger King Corp. v. Rudewicz, 471 U.S. 462, 474-475 (1985).

"The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'"  Bridgeport Music v. Still N The Water Publishing, 327 F. 2d at 478, quoting Burger King Corp. v. Rudewicz, 471 U.S. at 475.

In the instant case, Costello has had absolutely no contact with Illinois and has not undertaken any act which would create a "substantial connection" with this forum. (Exhibit 2, Costello Aff. ¶4.)  Costello is a small business, incorporated in the Commonwealth of Massachusetts, and licensed as a real estate broker by the Commonwealth of Massachusetts, has an office in Massachusetts, and conducts no business whatsoever in the State of Illinois. (Id. at ¶3.)  Indeed, the contract, upon which the Plaintiff bases the instant cause of action, is between Costello and GMAC Home Services, Inc. a Delaware corporation. (Exhibit A (Contract) to

3

Exhibit 1 (Complaint) at p. 1.)  An amendment to this contract appears to replace GMAC Home Services, Inc. with an entity from New Jersey, known as GMAC Real Estate, LLC d/b/a GMAC Real Estate.  (Exhibit B (Contract Amendment) to Exhibit 1 (Complaint).)

Neither the original contract nor the amendment make by reference to the State of Illinois. Costello negotiated the terms and executed the contract while in the Commonwealth of Massachusetts.  (Exhibit 2, ¶2.)

Not only is there no "substantial connection" with Illinois, there is absolutely no connection with Illinois.

Indeed, a review of the Complaint establishes that it was the unilateral activity of the Plaintiff that connects in even the remotest of ways the Defendant with Illinois.  In the amendment to the contract, GMAC Real Estate, LLC states it is located at 447 Martinsville Road, Liberty Corner, New Jersey.  (Exhibit B (Contract Amendment) to Exhibit 1 (Complaint).) Accepting the Plaintiff's allegations as true, GMAC Real Estate, LLC now has its principal place of business in Illinois.  Such a change was accomplished not by any action by Costello, but rather by an action by the Plaintiff.  Such is not sufficient to satisfy any aspect of the purposeful availment criteria.

Moreover, it is difficult, if not impossible, to conclude that by entering into a contract to use the "Marks," in connection with its real estate brokerage business in Massachusetts, with a Delaware corporation with a stated place of business in New Jersey, that Costello could reasonably anticipate being haled into court in Illinois.  The contract makes no reference to Illinois, contains no stipulation to jurisdiction clause, and provides that the contract be construed in accordance with the laws of Massachusetts.

4

Under these circumstances, Costello could no more reasonably anticipate being haled into court in Illinois as it could anticipate having to appear in Alaska. The Plaintiff cannot demonstrate any purposeful availment by Costello to the jurisdiction of Illinois.

Accordingly, the instant motion to dismiss should be allowed.

With regard to the second prong of the <u>Southern Machine</u> test, "the cause of action must arise from the defendant's activities in the forum state." As has been previously stated, Costello executed and negotiated the contract in Massachusetts, uses the "Marks" only in Massachusetts, conducts business solely in Massachusetts, and does no business in Illinois.[1] There can be no credible argument that the instant cause of action arose from Costello's activities in Illinois.

Likewise, the third-prong of the <u>Southern Machine</u> test cannot be satisfied as a consequence of any act by the Defendant in Massachusetts. There is no way make personal jurisdiction in Illinois reasonable.

---

[1]    It is perhaps persuasive to note that alleging personal jurisdiction over the Defendant, the Plaintiff fails to set forth any specific acts within Illinois, but alleged only; "Venue is proper in this Court under 28 U.S.C. §1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district." See paragraph 4 of the Complaint.

The instant motion to dismiss must be allowed.

Respectfully submitted,

COSTELLO REALTY, INC.

Eugene E. Gozdecki, Esq.

Local Counsel:

Eugene E. Gozdecki, Esq.
Earl E. Farkas, Esq.
Gozdecki & Del Giudice
221 North LaSalle Street, Suite 2200
Chicago, IL 60601

Lead Counsel:

Edward J. McCormick, III, Esq.
Gilmore, Rees, Carlson & Cataldo, P.C.
1000 Franklin Village Drive
Franklin, MA 02038-4001
(508) 520-2200

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GMAC REAL ESTATE, LLC,

        Plaintiff,

   v.

COSTELLO REALTY, INC.,

        Defendant.

05C 0073

JUDGE CASTILLO

MAGISTRATE JUDGE LEVIN

Plaintiff, GMAC Real Estate, LLC ("GMACRE"), by its attorneys, as and for its Complaint against Defendant, Costello Realty, Inc., alleges as follows:

## Parties and Jurisdiction

1.    GMACRE is a limited liability company organized and existing under the laws of the State of Delaware having its principal place of business in the State of Illinois. GMACRE is engaged in the business of granting to others ("franchisees") the right to operate residential real estate brokerage offices using various trade and service marks, including the mark "GMAC® Real Estate" (the "GMAC Marks").

2.    Upon information and belief, Costello Realty, Inc. ("Costello") is a limited liability company organized and existing under the laws of the State of Massachusetts having its principal place of business in Massachusetts. Costello is a former franchisee of GMACRE.

3.    This Court has original subject matter jurisdiction of this action under 28 U.S.C. § 1332, in that it is a civil action wherein the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.



EXHIBIT
1

4.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## The Parties' Written Service Contract

5.    On or about April 24, 2000, Costello entered into a written GMAC Home Services, Inc. Real Estate Service Affiliate Contract (the "Service Contract") with GMAC Home Services, Inc. ("GMACHS") pursuant to which GMACHS granted Costello a franchise to operate a residential real estate office in Massachusetts.  Under the Service Contract, Costello received, among other things, a limited license to use the Better Homes and Gardens trademarks and services marks (the "BH&G Marks").  A true and correct copy of the Service Contract is annexed hereto as Exhibit A and incorporated herein by reference.

6.    GMACHS assigned to GMACRE, and GMACRE assumed from GMACHS, GMACHS' rights and obligations under the Service Contract.

7.    On or about April 24, 2000, Costello entered into a Contract Amendment with GMACRE.  Pursuant to the Contract Amendment, Costello agreed to transition from the BH&G Marks to the GMAC Marks.  The Contract Amendment also extended the term of the Service Contract through September 1, 2005.  A true and correct copy of the Contract Amendment is annexed hereto as Exhibit B.

8.    Under the Service Contract, Costello agreed, among other things, to pay GMACRE certain fees, including Transaction Fees and Advertising Fees.  The Transaction and Advertising Fees, which are due and payable on a monthly basis, are computed as a percentage

of the commission and fees income Costello generated from the sale of residential real property. Costello also agreed to pay GMACRE an annual Referral Office Fee.

9.      Under Paragraph 12 of the Service Contract, Costello agreed to permit a GMACRE representative "to inspect and audit [Costello's] accounting records and books." Costello agreed that if the audit revealed a shortage of three percent (3%) or more in residential income reported, Costello would pay GMACRE, in addition to any amounts due and applicable late fees, the travel costs and expenses of the auditors involved in the audit.

10.     Costello further agreed that in the event collection action was necessary to recover monies due GMACRE, Costello would pay interest and GMACRE's costs of collection, including attorneys' fees and court costs.

### Costello's Underreporting Of Residential Income and Other Breaches

11.     In January of 2003, GMACRE attempted to perform an audit of Costello's books and records. Costello advised the auditor that it had destroyed all records after it filed its tax return and that, as a result, nothing was available to audit.

12.     There were significant discrepancies between the income set forth in Costello's tax returns and the sales figures which Costello had reported to GMACRE.

13.     At GMACRE's request, Costello put the auditor in contact with Costello's accountant, who supplied various documentation and information. GMACRE then audited Costello's books and records.

14.     The audit report revealed that between 1999 and 2001, Costello failed to report $1,013,033.00 in residential commission income to GMACRE.

15.    Based on this underreporting, GMACRE invoiced Costello $75,295.95, which represents the Transaction Fees, Advertising Fees and late charges due on the $1,013,333.00 in residential commission income which Costello failed to report to GMACRE, and the audit fee which GMACRE incurred discovering Costello's underreporting.

16.    Costello failed and refused to pay GMACRE the fees due as a result of its underreporting.

17.    Accordingly, on August 28, 2003, GMACRE advised Costello that it was in breach of its obligations under the Service Contract. The letter further advised Costello that it was required to pay the amounts due within 30 days of the date of the letter.

18.    Costello did not pay GMACRE any portion of the $75,295.95.

19.    Rather than cure its breaches, in September of 2004, Costello ceased paying any fees to GMACRE and ceased reporting its monthly residential commission income. Furthermore, upon information and belief, Costello abandoned its GMACRE franchise.

20.    On December 14, 2004, GMACRE sent Costello a Notice of Termination advising it that the Service Contract was terminated effective immediately as a result of Costello's failure and refusal to cure its breaches. The December 14th Notice reminded Costello of its post-termination obligations under the Service Contract, including its obligation to cease all use of the GMAC Marks. The December 14th Notice also advised Costello that it owed GMACRE $142,027.34, consisting of, among other things, unpaid Transaction and Advertising Fees (for the period during which Costello ceased submitting monthly reports) and the fees which the audit revealed had not been paid.

21.    Costello has failed and refused to pay these amounts to GMACRE. The sum of at least $142,027.34 remains due and owing to GMACRE.

22.    Under the Service Contract, Costello agreed to reimburse GMACRE for all of the costs it incurred, including reasonable attorneys' fees, in enforcing Costello's post termination payment obligations.

23.    GMACRE has fully performed its obligations under the Service Contract.

## COUNT I

### (Breach of Contract)

24.    GMACRE realleges and incorporates by reference paragraphs 1 through 23 of its Complaint, inclusive, as and for this Paragraph 24, as if fully set forth herein.

25.    Costello has breached the Service Contract by, among other things, failing and refusing to pay Transaction Fees, Advertising Fees and other fees to GMACRE.

26    As a direct and proximate result of Costello's breaches of the Service Contract, GMACRE has suffered damages in an amount in excess of $142,027.34, including, among other things, unpaid Transaction, Advertising and Referral Fees, loss of goodwill and damage to reputation and the loss of the Transaction and Advertising Fees GMACRE would have earned for the remainder of the term of the Service Contract but for Costello's breaches thereof.

**WHEREFORE**, GMAC Real Estate, LLC requests that judgment be entered in its favor

and against defendant Costello Realty, Inc., as follows:

        (a).    for a sum to be determined at trial, but in excess of $142,027.34, plus
interest, attorneys' fees and costs; and

        (b).    for such other and further relief as this Court deems just and equitable.

                          **GMAC REAL ESTATE, LLC**

By: _____
                          One of Its Attorneys

Norman M. Leon
Catherine Burkhardt
**DLA Piper Rudnick Gray Cary US LLP**
203 North LaSalle Street, Suite 1800
Chicago, Illinois 60601
(312) 368-2192

# EXHIBIT A

# GMAC Home Services, Inc.

## Real Estate Service

## Affiliate Contract

**April 1999**

# TABLE OF CONTENTS

**Section**                                                                                       **Page**

1.  The Service ..................................................................................... 1
2.  Relationship of the Parties .................................................................. 2
3.  The Marks ...................................................................................... 2
4.  Use of Marks .................................................................................. 3
5.  Materials ....................................................................................... 4
6.  Grant of the License ......................................................................... 5
7.  No Conflicting License ...................................................................... 6
8.  Residential Commission and Fee Income ................................................ 6
9.  Fees ............................................................................................ 6
10. Payment of Fees ............................................................................. 9
11. Late Payment ................................................................................. 9
12. Verification Rights .......................................................................... 9
13. Referrals ...................................................................................... 10
14. Procedures .................................................................................... 10
15. Performance Standards ..................................................................... 10
16. Assignment and Ownership ................................................................ 11
17. Termination ................................................................................... 13
18. Obligations Upon Termination ............................................................ 15
19. Warranties and Representations ........................................................... 16
20. Indemnification and Insurance ............................................................ 17
21. Construction .................................................................................. 17
22. Modification of Contract ................................................................... 17
23. Severability ................................................................................... 17
24. Non-Waiver ................................................................................... 17
25. Notices ......................................................................................... 18
26. Term and Renewal .......................................................................... 18
27. Date ............................................................................................ 19

i

# GMAC HOME SERVICES, INC.
## REAL ESTATE SERVICE AFFILIATE CONTRACT

A Contract between **GMAC HOME SERVICES, INC.** a Delaware corporation, 477 Martinsville Road, Liberty Corner, New Jersey 07938; and

Richard F. Costello Realty, Inc.                 DBA  Costello Realty, Inc.
(Exact name under which Real Estate       (Any change in DBA requires prior written approval)
License is held, "Affiliate")

FEDERAL ID # 04-2601786

1.    **The Service.** GMAC Home Services, Inc. and its predecessors have developed a Service which permits use of the Marks (as defined in Section 3) including the Mark, Better Homes and Gardens ® in the promotion and sale of residential real estate. ("*Better Homes and Gardens*" is sometimes used in this document to identify GMAC Home Services, Inc.) The Service provides each Affiliate with the authority, prestige and goodwill in the Marks built up since 1924 and by Principal Member since the inception of Principal Member's use of its trade name.

The Service provides guidelines regarding the use of the *Better Homes and Gardens* name. Such formats are intended to maximize the value of the nationally recognized image of *Better Homes and Gardens* and improve the effectiveness of the Affiliate's advertising, public relations, personnel recruiting, and sales promotion programs.

*Better Homes and Gardens* agree to conduct a Management Orientation Session in Des Moines, Iowa or Liberty Corner, New Jersey.  Affiliate agrees to attend the first available Management Orientation Session after execution of this Contract.

The Service facilitates referrals between Members and develops systems and programs to deliver sales training and education, management training, and client promotional materials to its Members.

*Better Homes and Gardens* will periodically provide a national convention for the benefit of the membership.

*Better Homes and Gardens* will strive continually to improve the Service through development of new programs and review of existing programs. *Better Homes and Gardens* will

seek recommendations from Members that will strengthen the organization at local and national levels.

2.  **Relationship of the Parties**.    The relationship of the parties is that of two independently owned and operated businesses which share similar mutual interests: to grow and prosper through the sale of residential real estate. The parties acknowledge that the achievement of these goals and the success of the Service depend upon *Better Homes and Gardens* making available an effective Service, Affiliate's and Principal Member's promotion and use of the Service, and the continuing good reputation of *Better Homes and Gardens*, Principal Member and Affiliate.

Affiliate agrees to conduct its real estate brokerage business in such fashion as to reflect favorably at all times on *Better Homes and Gardens* and Principal Member and the good names, goodwill, and reputations thereof, and in compliance with all laws and regulations pertaining to the operation of its real estate brokerage business.

Affiliate, Principal Member and *Better Homes and Gardens* shall not hold themselves out as agents, partners, joint venturers, or employees of each other and shall have no right to bind or obligate each other in any way.

3.  **The Marks**.  Meredith Corporation is the owner of the Better Homes and Gardens trademarks and service marks, logos, designs, colors, and other indicia, and of registrations in the U.S. Patent and Trademark Office. Meredith Corporation has granted GMAC Home Services, Inc. a license to use and to sublicense said trademarks and service marks. The following registrations, hereinafter referred to collectively as "Marks," are in full force and effect, and apply to real estate services, periodical publications, home building, insurance and related programs.

| | | | |
|---|---|---|---|
| 797,907 | Better Homes for All America | 1,243,115 | Two Names You Can Trust |
| 1,127,616 | Better Homes and Gardens | 1,407,044 | Better Homes and Gardens Yard Sign |
| 1,127,617 | Better Homes and Gardens | | |
| 1,241,435 | House and Trees Logo | 1,594,333 | House and Trees Logo (clothing) |

Marks and registrations and trademarks which will be developed hereinafter are included in the "Marks." All provisions of this Contract applicable to the Marks shall apply to any other trademarks, service marks or other commercial symbols hereafter authorized in writing for use by and licensed to Affiliate by GMAC Home Services, Inc.

If it becomes advisable at any time in the sole judgment of *Better Homes and Gardens* to modify or discontinue use of any Mark and/or for Affiliate's business to use one or more additional or substitute trademarks or service marks or substitute trade dress, Affiliate agrees to comply with

2

the directions of *Better Homes and Gardens* to modify or otherwise discontinue the use of such Mark and/or to use one or more additional or substitute trademarks, service marks, logos or commercial symbols or substitute trade dress after notice thereof by *Better Homes and Gardens*. If the trademark license with Meredith Corporation is terminated by Meredith Corporation or is voluntarily relinquished, GMAC Home Services, Inc. shall provide Affiliate a reasonable notice period not less than six months prior to conversion to a new brand. *Better Homes and Gardens* shall have no obligation to reimburse Affiliate for any expenditures made by Affiliate to modify or discontinue the use of a Mark or to adopt substitutes for a discontinued Mark including without limitation any expenditures relating to advertising or promotional materials or to compensate Affiliate for any goodwill related to the discontinued Mark.

*Better Homes and Gardens* warrants it is authorized to license the trade name of the Principal Member. The trade name *Better Homes and Gardens* is authorized to license hereunder is Carlson Real Estate_____. This name is owned by Eastern Massachusettts _____ (hereinafter referred to as Principal Member) and licensed to *Better Homes and Gardens*.  Real Estate, Inc.

*Better Homes and Gardens* will protect and defend the Marks in order to maintain their value to Affiliate, Principal Member and *Better Homes and Gardens*. Affiliate agrees that goodwill resulting from its use and promotion of Marks will accrue to the benefit of *Better Homes and Gardens*.

4.    **Use of Marks**. To maintain the integrity of the Marks and the Service, *Better Homes and Gardens* has the right to control the quality of all programs bearing the Marks and the manner in which the Marks are used.

The Marks shall be used: (1) only in conjunction with real estate sales offices approved by *Better Homes and Gardens;* and (2) only in the form and style authorized by *Better Homes and Gardens* as outlined from time to time in its manuals. Any departure from the manuals or any use of the Marks on printed materials not outlined in the manuals must be approved in advance by *Better Homes and Gardens*. Use of the Marks on any other publication (e.g., homeowner newsletter, decorating magazine, cookbook or booklets) is specifically prohibited unless the publication is approved in writing prior to publication.

It is agreed that Affiliate will use the Marks in all residential real estate brokerage activities within Principal Member's Licensed Territory (**Exhibit A**) during the term of this Contract. The *Better Homes and Gardens* trademark is to be used only in conjunction with the brokerage of "residential real property" (as defined in Section 8(b)).

The Marks shall not be used to identify any property, goods, or services provided by Affiliate other than those specifically approved in writing by *Better Homes and Gardens*. It is understood that

3

Affiliate will not use the Marks in any manner which indicates or implies *Better Homes and Gardens* endorsement of the home being sold by Affiliate, including but not limited to its design, quality, or price.

The Marks shall not be used as part of the corporate name of Affiliate or as part of an Internet (or other computer network) domain name, although the Marks shall be used as part of the trade name of Affiliate in connection with residential brokerage activities. Principal Member shall determine the manner in which its trade name shall be used by Affiliate, and may require adoption of Principal Member's trade name or some other indicia of affiliation by Affiliate. Any trade name usage or identity prescribed for Affiliate shall conform to the rules and regulations of Affiliate's jurisdiction and shall be approved by *Better Homes and Gardens*. The trade name usage or identity prescribed for Affiliate shall be used without the Marks in connection with non-residential brokerage activities.

Because complete and detailed uniformity under many varying conditions may not be possible or practical, *Better Homes and Gardens* specifically reserves the right and privilege, in its sole discretion and as it may deem in the best interests of all concerned in any specific instance, to vary standards for any member based upon the peculiarities of particular circumstances, business practices or any other conditions which *Better Homes and Gardens* deems to be of importance to the successful operation of such affiliate's business. Affiliate shall have no recourse against *Better Homes and Gardens* for any variation from standard specifications and practices granted to any other member and shall not be entitled to require *Better Homes and Gardens* to grant Affiliate a like or similar variation.

5.    **Materials.** Affiliate agrees that use of all *Better Homes and Gardens* materials (including copyrighted materials) is restricted to use in its own business. Affiliate will not license *Better Homes and Gardens* materials and programs to others or reproduce such materials and programs for its own use, or adapt and use, or permit any of its sales associates to adapt and use, any *Better Homes and Gardens* materials on an Internet (or other computer network) site without advance written approval by *Better Homes and Gardens*.

To maintain consistency, all building signs, yard signs, promotional items, and printed materials must adhere to the design, size and colors specified in the manuals supplied by *Better Homes and Gardens* from time to time. Any departure from the specifications set forth therein must be approved in writing in advance by *Better Homes and Gardens*. Substitution of materials that are used in the construction of these items, or lack of compliance with the specified design, size, coloration, or use of the Marks is unacceptable and will be deemed a breach of this Contract. Each office will display building signs in conformance with the specified standards of design and materials within sixty (60) days of the Opening Date. If a particular zoning ordinance or lease restriction

4

precludes use of a standard approved sign, the specifications for an alternate sign must be presented for approval to *Better Homes and Gardens* with a copy of the zoning ordinance or lease restriction.

All business records, letterheads, business forms and advertising (excluding business cards) disseminated to the public and used in the business licensed hereunder shall indicate Affiliate's independent ownership of the brokerage business with the statement "An Independently Owned and Operated Firm" or an equivalent statement.

6.    **Grant of the License**. *Better Homes and Gardens* has entered into this Contract in reliance upon the representations of Affiliate. Affiliate represents that it presently operates offices, or will, by the Opening Date, operate offices at the following locations, and *Better Homes and Gardens* hereby grants a license to use the Marks at these office locations, within the guidelines set forth herein:

| Location | 443 East Central street, Box 283, Franklin, MA 02038 |
|----------|------------------------------------------------------|
| Location | |
| Location | |
| Location | |

(If identified on a map, such map is attached hereto as **Exhibit A**.)

The Licensed Territory of Principal Member is described on **Exhibit A**. With the approval of Principal Member, *Better Homes and Gardens* and Affiliate may agree to the area within which *Better Homes and Gardens* will not grant additional affiliate Licenses. However, Affiliate understands and agrees that its rights in the Marks are **nonexclusive** and will be shared by others in its market.

Affiliate agrees to receive the approval of *Better Homes and Gardens* prior to adding additional offices (whether such additional offices are to be opened by Affiliate or acquired as a result of an acquisition or merger) or relocating any existing office. Affiliate acknowledges that if it acquires or merges with another *Better Homes and Gardens* firm in market areas not contiguous to its market area, *Better Homes and Gardens* may require that the offices gained by Affiliate as a result of such acquisition or merger be treated as a separate reporting unit for the purpose of computing Transaction Fees and Advertising & Sales Promotion Fees as provided below.

Affiliate shall neither (a) establish or own an interest in any real estate brokerage office or real estate information center not licensed by *Better Homes and Gardens* within Principal Member's Licensed Territory, or (b) establish or own any interest in any real estate brokerage office or real estate information center using the Marks located outside Principal Member's Licensed Territory.

5

Affiliate understands and agrees that it may not sublicense the *Better Homes and Gardens* name, or any other Mark or Principal Member's name.

7.    **No Conflicting License**. During the term of this Contract, irrespective of whether this Contract is terminated by Affiliate prior to the end of its term as provided in section 17(a), neither Affiliate nor its principals, owners or Broker of Record shall become affiliated with any other real estate licensing system; provided, however, that the Broker of Record of Affiliate shall not be subject to this provision if Member is sold or goes out of business unless he or she is also an owner.

8.    **Residential Commission and Fee Income**. Commission and fee income generated from the sale of residential real property (referred to in this Contract as "Residential Commission Income") are used as the basis for the calculation of fees. Residential Commission Income is computed after division with cooperating brokers in other firms and after payment of referral fees. No expenses or membership fees of any type (including multiple listing service fees) or division with brokers and sales associates working in association with Affiliate may be deducted in the computation of Residential Commission Income.

(a)    **Residential Commission Income**. Residential Commission Income is defined as the sum of all commissions and other fees received by Affiliate , including any mortgage, lien, or other consideration held or earned by Affiliate in lieu of a commission. Residential Commission Income shall include selling bonuses, document preparation fees and administrative fees. Referral payments received from *Better Homes and Gardens*, are not included in Residential Commission Income.

(b)    **Residential Real Property**. Residential real property is defined as new and resale single family homes, residential acreages, farm houses, condominiums and cooperatives, townhouses, vacation homes including interval-ownership/ time-share homes, mobile homes when affixed to real property, residential listings sold at auction; housing of up to and including four-dwelling units on one lot, all unimproved single lots, and other unimproved land and vacant lots intended by the purchaser thereof to be used for recreational purposes or as "residential real property" as that term is otherwise defined in this Section.

(c)    Affiliate is not required to include Residential Commission Income Commissions or fees earned in connection with rental, property management, commercial real estate transactions or commissions and fees attributable to the non-residential portion of a farm transaction.

9.    **Fees**. All payments by Affiliate shall be paid to *Better Homes and Gardens* as described herein unless the Conversion Amendment attached hereto as **Exhibit B** has been executed by Affiliate and *Better Homes and Gardens*. In consideration for the license and for this Contract, Affiliate agrees to pay the following fees to *Better Homes and Gardens*:

6

(a)    <u>Joining Fee</u>. If this is Affiliate's initial Contract and not a renewal Contract, Affiliate agrees to pay a Joining Fee in an amount and subject to the terms and conditions set forth in the Joining Addendum attached hereto as **Exhibit C**.

(b)    <u>Transaction Fee</u>. A Transaction Fee, which represents the agreed-upon value of the use of the Marks, is due and payable within ten (10) days after the end of each month on Residential Commission Income received by Affiliate during the previous month. Affiliate's Transaction Fee will be computed on a cumulative, yearly basis, with the amount of such Transaction Fee to be determined in accordance with the following Transaction Fee Table:

| | Year-To-Date Residential Commission Income Ranges | | Applied Percentage |
|---|---|---|---|
| On the first | $125,000 | ($0.00 to $125,000) | 5.00% |
| On the next | $125,000 | ($125,001 to $250,000) | 4.75% |
| On the next | $125,000 | ($250,001 to $375,000) | 4.50% |
| On the next | $125,000 | ($375,001 to $500,000) | 4.25% |
| On the next | $250,000 | ($500,001 to $750,000) | 4.00% |
| On the next | $250,000 | ($750,001 to $1,000,000) | 3.50% |
| On the next | $1,000,000 | ($1,000,001 to $2,000,000) | 3.25% |
| On the next | $1,000,000 | ($2,000,001 to $3,000,000) | 3.00% |
| On the next | $1,000,000 | ($3,000,001 to $4,000,000) | 2.75% |
| On the next | $1,000,000 | ($4,000,001 to $5,000,000) | 2.25% |
| On the next | $5,000,000 | ($5,000,001 to $10,000,000) | 2.00% |
| On the next | $5,000,000 | ($10,000,001 to $15,000,000) | 1.75% |
| On all remaining RCI | | (Over $15,000,001) | 1.50% |

With each monthly transaction report, Affiliate shall compute the Transaction Fees payable on all transactions for the year to date. Affiliate shall then deduct the amount of Transaction Fees previously paid during the year to determine the amount of Transaction Fees required to be paid with the current report. For purposes of computing fees, the start of each year shall be the anniversary of Affiliate's Opening Date (as set forth in Section 27). If Affiliate qualifies, Affiliate and Company may agree to compute the Transaction Fee in accordance with the Affiliate Transaction Fee Amendment attached hereto as **Exhibit D**.

For Affiliate's first License only, Affiliate is not required to pay Transaction Fees on Residential Commission Income earned as a result of transactions under contract or in escrow on the

Opening Date which are closed within thirty (30) days of the Opening Date. All subsequent Licenses will be assessed fees from the Opening Date.

(c)    **Advertising & Sales Promotion Fee.** An Advertising & Sales Promotion Fee of two and two-tenths percent (2.2%) of the Residential Commission Income is due and payable within ten (10) days after the end of each month. The Advertising & Sales Promotion Fee is due on Residential Commission Income received by Affiliate in connection with the sale of residential real property.

For Affiliate's first License only, Affiliate is not required to pay Advertising & Sales Promotion Fees on Residential Commission Income earned as a result of transactions under contract or in escrow on the Opening Date which are closed within thirty (30) days of the Opening Date. All subsequent Licenses will be assessed fees from the Opening Date.

*Better Homes and Gardens* will provide an annual report and accounting to Principal Member of all Advertising & Sales Promotion Fees collected. If Principal Member administers an advertising and sales promotion fund within the area in which it and Affiliate are located, Principal Member and Affiliate will sign the Advertising Amendment attached as **Exhibit E-1**.

(d)    **Local Advertising.** *Better Homes and Gardens* recognizes the importance of local advertising and sales promotion activities to increasing market share. *Better Homes and Gardens* has developed programs to foster local advertising and sales promotion and, in consultation with the Principal Member, has selected the program applicable to Affiliate. It is more fully described in the:

    XXX  Advertising Amendment (Exhibit E-1)
    ☐  Local Advertising Support Program (LASP) Amendment (Exhibit E-2)
    ☐  Super Local Advertising Support Program (Super LASP) Amendment (Exhibit E-3)

attached to this Contract and incorporated by this reference.

(e)    **Referral Office Fee.** A Referral Office Fee of $438 per year shall be paid by Affiliate for each office using the Marks; provided, however, Affiliate shall be charged only one referral office fee in any year its Residential Commission Income is less than $500,000. This fee shall be paid in monthly installments and shall be billed to Affiliate's account. Affiliate will advise *Better Homes and Gardens* within thirty (30) days of the opening or closing of any office. As used in this section, "office" means residential real estate sales office and specifically excludes offices used for administrative purposes, all kiosks or pushcarts and model home sales sites.

8

(f)    **Referral Fee**. Within ten (10) days after closing, each Affiliate receiving a referral through *Better Homes and Gardens* which results in a closing shall make payment in accordance with Section 13 of this Contract.

(g)    **Renewal Fee**. A fee of $250 is due upon renewal of this Contract.

(h)    **Transfer Fee**. A transfer fee of $250 will be due in connection with the transfer of any ownership interest in Affiliate of more than thirty percent (30%).

(i)    **Convention Registration Fee**. Affiliate shall pay a convention registration fee, which shall be billed to Affiliate's account within 60 days after the convention. The convention registration fee shall be an amount equal to the lowest-priced registration fee offered in connection with such convention, and payment of this fee shall entitle Affiliate to one registration at such convention.

10.    **Payment of Fees**. Affiliate agrees to report and make payment of Transaction Fee and Advertising & Sales Promotion Fees to by *Better Homes and Gardens* within ten (10) days after the end of each month using forms provided or computer software recommended by *Better Homes and Gardens*. Affiliate agrees to furnish any other reports, such as annual financial statements, as may be reasonably requested by *Better Homes and Gardens*.

11.    **Late Payment**. Should Affiliate become delinquent on any payment plan (whether for Joining Fees, Conversion Costs or other such plan), *Better Homes and Gardens* shall have the right to accelerate the balance and declare the entire amount due. Affiliate agrees to pay to *Better Homes and Gardens* a late payment charge in an amount which will not exceed a rate of prime plus four percent (4%), but in any event not less than twelve percent (12%) or more than fifteen percent (15%), on the unpaid amount after the due date. Prime is defined as the rate charged by Citibank, N.A., New York City, to its most credit-worthy customers for 90-day loans. In the event Affiliate fails to pay any amount when due, *Better Homes and Gardens* shall also have the right, at its option, to deduct any and all such amounts from any payments due to Affiliate pursuant to this Contract or otherwise. In the event collection action is necessary to recover monies due *Better Homes and Gardens*, Affiliate agrees to pay interest and costs of collection, including agency and attorneys fees and court costs.

12.    **Verification Rights**. Affiliate agrees to provide annual financial statements in a form acceptable to *Better Homes and Gardens*. Affiliate must keep a separate set of books and records for each line of business in which it engages. Affiliate agrees to permit a *Better Homes and Gardens* representative to inspect and audit Affiliate's accounting records and books for each line of business in which Affiliate engages. During the course of an audit, if *Better Homes and Gardens* discovers a shortage of three percent (3%) or more in Residential Commission Income reported, Affiliate

agrees to pay *Better Homes and Gardens*, in addition to any amounts due, plus a late payment as outlined in Section 11, the actual travel costs and expenses of the auditors involved in the audit. *Better Homes and Gardens* shall have the right to examine Affiliate's offices and to confer with Affiliate and its employees to assure compliance with *Better Homes and Gardens* prescribed quality standards.

13.    **Referrals**. Affiliate agrees to place all residential real estate referrals with *Better Homes and Gardens* members or designated approved brokers, whether or not there is a member in the destination location. Affiliate agrees to register all residential referrals. Designated approved brokers may include a broker approved under a strategic alliance agreement or a non-member in a market where no *Better Homes and Gardens* member exists. Affiliate agrees to pay referral fees and royalties as hereafter set forth.

Affiliate will place all residential real estate referrals through the *Better Homes and Gardens* referral system.

Affiliate agrees to perform in accordance with the *Better Homes and Gardens* policies and standards as specified from time to time in the Relocation Procedures Manual.

Affiliate receiving referral agrees to remit to *Better Homes and Gardens* a fee equal to twenty-five percent (25%) of the Residential Commission Income earned from the referred side of the transaction, whether buying or listing. Affiliate further agrees that any referral received directly from another member will be registered with *Better Homes and Gardens* and subject to referral fees. *Better Homes and Gardens* agrees to send ninety percent (90%) of the referral fee received to the Affiliate from which the referral was generated.

Failure by Affiliate to comply with the policies, standards, and procedures constitutes a breach of this Contract and *Better Homes and Gardens* may, at its option, suspend further referrals to Affiliate or terminate Affiliate in accordance with Section 17 of this Contract. *Better Homes and Gardens* also may, at its option, suspend further referrals to Affiliate if Affiliate is in breach of any other provision of this Contract or fails to execute a renewal Contract on a timely basis.

Affiliate acknowledges that it acquires no rights or expectations with respect to referrals beyond those expressly stated in this Section 13.

14.    **Procedures**. Affiliate agrees to operate its business in the manner outlined in any procedures manual or directive supplied by *Better Homes and Gardens* or Principal Member.

15.    **Performance Standards**. Affiliate agrees that market coverage, consistent performance, recruitment and training of a full-time, professional sales staff and commitment to

*Better Homes and Gardens* programs are necessary for retention of the License granted by this Contract.

Affiliate's performance shall be reviewed annually on the anniversary of its Opening Date. Affiliate's average Residential Commission Income shall, for the twelve (12) month period being reviewed, exceed seventy-five percent (75%) of the higher of (i) the Residential Commission Income it attained during the first twelve (12) months after the Opening Date, or (ii) the average of the thirty-six (36) months prior to the most recent twelve (12) month period being reviewed. If Affiliate has been open less than forty-eight (48) months, the monthly average of the comparison period will be based on the number of months open, but never less than twelve (12) months. Failure to meet the performance requirements shall constitute a default under this Contract, and *Better Homes and Gardens* may, at its option, terminate this Contract.

16.    **Assignment and Ownership**.

(a)    **Assignment**.    *Better Homes and Gardens* shall have the right to transfer or assign all or any part of its rights or obligations under this Contract to any person or legal entity.

*Better Homes and Gardens* entered into this Contract in reliance upon the qualifications and representations of Affiliate and, where Affiliate is a partnership, corporation, or other entity, upon the qualifications and representations of Affiliate's principals and majority stockholders, respectively. Affiliate may assign this Contract (1) only in conjunction with the transfer of ownership of the assets of its real estate brokerage business, (2) only to the new owner thereof, (3) only where all of Affiliate's accrued monetary obligations and all other outstanding obligations to *Better Homes and Gardens* have been satisfied, and (4) only upon written request and with the prior approval of *Better Homes and Gardens*, such approval not to be unreasonably withheld. Affiliate shall remain liable for all of the obligations to *Better Homes and Gardens* in connection with the franchised business prior to the effective date of the transfer. Any transfer or assignment which would have the effect of transferring control of Affiliate shall be made only where all of Affiliate's accrued monetary obligations and all other outstanding obligations to *Better Homes and Gardens* have been satisfied and upon written request and with the prior approval of *Better Homes and Gardens*, such approval not to be unreasonably withheld. *Better Homes and Gardens* will require a copy of the transfer of ownership agreement and may require, as a condition of the transfer the following:

(1)    Execution by the assignee of a new Real Estate Service Contract in the form then being offered by *Better Homes and Gardens*.

(2)    Attendance by the principal of the assignee at a Management Orientation Session.

11

(b)     **Ownership**. Affiliate shall identify below the type of business entity that Affiliate operates as. Listed below are the principals and the shareholders who own a ten percent (10%) or more interest in Affiliate and the percentage interest each owns. Affiliate will notify *Better Homes and Gardens* prior to any change in the percentage interests shown below. Affiliate will also notify *Better Homes and Gardens* prior to any change of the Broker of Record named below. (If Affiliate is owned by another legal entity, Affiliate shall also identify that entity and its majority shareholders.)

         XXX     corporation: organized under the laws of the State of _Massachusetts_

         ☐      limited liability company: organized under the laws of the State of _____

         ☐      partnership: organized under the laws of the State of _____

         ☐      sole proprietorship

Paul K. Costello                               100    %

                                                        %

                                                        %

                   (Principals/Shareholders listed)

Paul K. Costello

                       (Broker of Record)

(c)     **Constructive Transfer**.     Any transfer upon the death or mental incapacity of Affiliate or any principal or shareholder of Affiliate, which transfer would result in a transfer control of the franchised business, shall be deemed a transfer subject to Section 16(a). An individual Affiliate's survivor (if business is held in joint tenancy), heirs, legatees, guardian, personal representative or conservator, or if a Affiliate is a partnership or corporation, the remaining Principals or Shareholders, together with the deceased or incapacitated principal's or shareholder's survivor, heirs, legatees, guardian, personal representative or conservator, may continue to operate the business subject to written notification of *Better Homes and Gardens* and satisfaction by the heirs, legatees, guardian, personal representative or conservator of the conditions of Section 16(a) for transfer of interest.

(d)     **Notice of Transfer**.     Affiliate will notify *Better Homes and Gardens* as early as practicable of acquisition or merger negotiations and in any event will notify *Better Homes and Gardens* at least ninety (90) days prior to the transfer of ownership of its real estate business.

17.     **Termination**.  This Contract may be terminated upon any one of the following conditions (in addition to the conditions specifically mentioned elsewhere in this Contract).  State law may set forth requirements for termination or nonrenewal procedures which differ from those set forth herein.  In those cases, applicable state law will be complied with.  Prior to the effective date of termination, Affiliate shall pay all monies due to *Better Homes and Gardens,* and shall furnish *Better Homes and Gardens* all required reports and records.  After termination, *Better Homes and Gardens* shall have no further obligations to Affiliate.

(a)     **By Mutual Agreement**:  Affiliate may with the consent of *Better Homes and Gardens* and upon one hundred eighty (180) days advance notice in writing, terminate this Contract.  If the 180 days' advance notice would expire beyond the end of the term of this Contract, Affiliate will be deemed to be operating under the terms and conditions of this Contract until the 180 day term expires.  The parties agree that the terms of Sections 7 and 18 shall survive termination of the Contract pursuant to this section.  *Better Homes and Gardens* may, at its option, discontinue placement of referrals and fulfillment of material orders following receipt of a notice given pursuant to this section.

(b)     **By Affiliate**:  Affiliate may terminate this Contract upon thirty (30) days' written notice if *Better Homes and Gardens* is in breach of this Contract, provided the notice specifies the breach and *Better Homes and Gardens* fails to cure such breach within the thirty (30) day notice period or, if the breach is one which may not reasonably be expected to be cured within thirty (30) days, a cure of such breach commenced by *Better Homes and Gardens* within that time and diligently prosecuted thereafter.

(c)     **Upon Affiliate's Insolvency**:  Affiliate shall be deemed in default under this Contract, and all rights granted to Affiliate hereunder shall automatically terminate, without notice to Affiliate, if Affiliate shall become insolvent or makes a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Affiliate or such petition is filed against and is not opposed by Affiliate; or if Affiliate is the subject of any other action or proceeding asserting creditor's rights; or if a final judgment against Affiliate remains unsatisfied or of record for at least thirty days; or if Affiliate is dissolved; or if execution is levied against Affiliate's business or property.

(d)     **By Better Homes and Gardens**:  Affiliate shall be deemed in default under this Contract, and *Better Homes and Gardens* may, at its option, terminate this Contract and all rights granted to Affiliate hereunder, without affording Affiliate any opportunity to cure the default, effective immediately upon receipt of notice by Affiliate from *Better Homes and Gardens,* upon the occurrence of any of the following events:

13

(1)    If Affiliate at any time ceases to operate or otherwise abandons its real estate brokerage business or closes all of its offices. A closed office shall mean one which is (i) not open and staffed during all regular business hours, or is (ii) not equipped as necessary for the transaction of real estate brokerage activities; provided, however, that if Affiliate's business premises are damaged or destroyed, then Affiliate shall have thirty (30) days after such event in which to apply for approval from *Better Homes and Gardens* to relocate or reconstruct the premises, which approval shall not be unreasonably withheld. Affiliate agrees to notify *Better Homes and Gardens* immediately upon the occurrence of any cessation or abandonment of its brokerage business or the closure of all of its offices;

(2)    If the real estate license of Affiliate or any of its principals is suspended, revoked or not renewed, or if Affiliate or any of its principals otherwise forfeits the right to do or transact business in the jurisdiction where the real estate brokerage business is located, Affiliate agrees to notify *Better Homes and Gardens* immediately upon the occurrence of any of the foregoing events;

(3)    If Affiliate or any of its principals conducts its brokerage business in such a fashion as to reflect unfavorably on *Better Homes and Gardens* or the goodwill, good name, and reputation thereof, or engages in any activity in violation of any laws pertaining to the operation of the real estate brokerage business, including laws relating to fair practices and consumer protection. Affiliate agrees to notify *Better Homes and Gardens* immediately upon the filing of any legal action alleging such violations by Affiliate;

(4)    If Affiliate or any of its principals purports to transfer any rights or obligations under this Contract or any interest in Affiliate to any third party without *Better Homes and Gardens'* prior written consent, contrary to the terms of Section 16 of this Contract;

(5)    If Affiliate has made any material misrepresentation in its application or Business and Financial History Form; or if Affiliate knowingly maintains false books or records, or submits or makes any false reports or statements to Principal Member or *Better Homes and Gardens;*

(6)    If Affiliate is in default of any provision of this Contract and previously received a Notice of Termination from *Better Homes and Gardens* for the same, similar, or different default in any preceding twelve (12) month period; or

(7)    If the license of the Principal Member is not renewed or terminated for any reason, provided, however, that in such an event Affiliate shall be afforded the opportunity, upon payment of a $250 processing fee, to enter into a *Better Homes and Gardens* Member Contract in the form then being offered. In the event Affiliate avails itself of this

14

opportunity, its exclusive Licensed Territory shall be the area(s) licensed in Section 6 of this Contract unless Affiliate negotiates a Territory Expansion and pays the appropriate Joining Fee.

(e)    Except as provided in Sections 17(c) and 17(d) of this Contract, Affiliate shall have thirty (30) days after its receipt from *Better Homes and Gardens*, or from the Principal Member in the case of a default under Section 17(d)(1), of a written Notice of Termination within which to remedy any default of Affiliate under this Contract and to provide evidence of remedy to *Better Homes and Gardens*. If any such default is not cured within that time, or such longer period as may be required either by applicable law or by the specific provision of this Contract of which Affiliate is in default, then, in such event, this Contract shall terminate without further notice to Affiliate, effective immediately upon the expiration of the cure period. Affiliate shall be in default hereunder for any failure to comply substantially with any of the requirements imposed on Affiliate by this Contract, or to carry out the terms of this Contract in good faith. Such defaults shall include, without limitation, the occurrence of any of the following events:

(1)    If Affiliate fails, refuses, or neglects promptly to pay when due any monies owing to *Better Homes and Gardens* or to submit the financial information required by *Better Homes and Gardens* pursuant to this Contract;

(2)    If Affiliate fails to fulfill its Performance Standards as described in Section 15 or maintain the standards or procedures prescribed by *Better Homes and Gardens* in this Contract or otherwise in writing; or

(3)    If Affiliate misuses or makes any unauthorized use of the Marks or otherwise materially impairs the goodwill associated therewith or Meredith's or GMAC's rights therein.

18.    **Obligations Upon Termination**.    After termination, expiration, transfer, or assignment of this Contract for any reason, Affiliate shall cease to have any right to use the Marks in any manner. Upon termination or expiration, Affiliate shall:

(a)    Discontinue use of all Marks and the words *Better Homes and Gardens* and not hold itself out in any manner that would give the public the impression it is still a licensee of *Better Homes and Gardens* or Principal Member. Affiliate agrees that *Better Homes and Gardens* shall have the right to secure an order enjoining Affiliate from any use of the Marks.

(b)    Pay *Better Homes and Gardens* all monies due on the date the termination or expiration of the Contract became effective and the following additional fees, which shall become due after said date:

15

(1)    Transaction Fees and Advertising & Sales Promotion Fees, computed as set forth above, on Residential Commission Income attributable to transactions in process on the termination date and from anticipated closings attributable to listings obtained while Affiliate was operating pursuant to the Contract; and

(2)    Referral Fees, computed as set forth above, on referrals sent or received prior to the date the termination or expiration of the Contract became effective.

(c)    Surrender to *Better Homes and Gardens* or its authorized representative all signs including yardsigns, letterheads, advertising, materials, business cards, and the like bearing the Marks return to *Better Homes and Gardens* all manuals, training materials, client promotion materials, and the like bearing the Marks. Affiliate agrees that *Better Homes and Gardens* shall have the right to secure an order enjoining Affiliate from any use of materials or programs which are part of the Service.

(d)    Take immediate steps to cancel all advertising, including advertising in the Yellow Pages of the telephone directory, which carries the Marks.

(e)    Execute any documents necessary to effect its obligations under this Section and to take such action as *Better Homes and Gardens* may deem reasonably necessary to evidence the fact that Affiliate has ceased using the Marks and has no further interest or right therein.

If after termination, expiration, or nonrenewal of this Contract, Affiliate shall fail or refuse to comply with any of the requirements of this Section, Affiliate shall reimburse *Better Homes and Gardens* in connection with any legal action taken to enforce compliance, including reasonable collection agency and attorney fees and court costs.

19.    **Warranties and Representations**. Affiliate represents that it is licensed to sell real estate in the geographical areas where it now operates.

Affiliate acknowledges that *Better Homes and Gardens* has delivered to Affiliate not less than ten (10) business days prior to the signing of this Contract a copy of the Offering Circular concerning this franchise for the state in which Affiliate intends to do business, which Affiliate has had the opportunity to review. Affiliate acknowledges that *Better Homes and Gardens* has not, either orally or in writing, represented that Affiliate will achieve at the licensed business any specified level of sales or profit, nor represented the sales or profit level or any other *Better Homes and Gardens* franchisee, but has referred Affiliate to the Offering Circular which provides Affiliate with the names, addresses and telephone numbers of other licensees of *Better Homes and Gardens* so that Affiliate can make its own inquiry. Affiliate acknowledges that any additional inquiry pertaining

16

to the nature of this franchise which Affiliate has made to *Better Homes and Gardens* in writing has been answered in writing to the satisfaction of Affiliate.

20. **Indemnification and Insurance**. Affiliate shall defend, indemnify and hold harmless *Better Homes and Gardens*, its agents and employees and Principal Member from and against any claims for damages, losses, and expenses including attorney's fees resulting in any way from the conduct of Affiliate's real estate brokerage business. Maintenance by Affiliate of the insurance coverages specified in the following section shall not be deemed to fulfill Affiliate's indemnification obligation to *Better Homes and Gardens*.

Affiliate shall, at its own expense, purchase and maintain comprehensive general liability insurance, including contractual, products/completed operations, and personal injury, and comprehensive automobile liability coverage, including owned, non-owned and hired automobiles. Minimum limits required are $500,000 per occurrence for bodily injury and $250,000 per occurrence for property damage. GMAC Home Services, Inc., Meredith Corporation and Principal Member must be named as additional insureds. Workers Compensation to the extent required by state law must be carried on each person having employee status in Affiliate's firm. *Better Homes and Gardens* recommends that Affiliate carry errors and omissions insurance coverage to protect Affiliate against losses due to normal operations. Affiliate agrees that all losses resulting from failure to obtain such insurance will be borne by Affiliate. In the event of cancellation, non-renewal or any material change of Affiliate's required insurance policies, thirty (30) days prior written notice must be given to *Better Homes and Gardens*. Certificates of Insurance acceptable to *Better Homes and Gardens* shall be filed with *Better Homes and Gardens*.

21. **Construction**. This Contract shall be construed in accordance with the laws of the state in which Affiliate is licensed to use the Marks. If Affiliate is licensed to use the Marks in more than one state, this Contract shall be construed in accordance with the laws of the state in which Affiliate is incorporated or, if Affiliate is not a corporation, the state in which Affiliate's principal administrative office is located.

22. **Modification of Contract**. No changes may be made in this Contract unless in writing and signed by the parties.

23. **Severability**. Each section and provision of the Contract is severable and if one portion is invalid, the remaining portion shall nevertheless remain in full force and effect.

24. **Non-Waiver**. No failure by *Better Homes and Gardens* to take action on any default of Affiliate, whether it is a single instance or a series of incidents, shall constitute a waiver of such default or the performance required of Affiliate. No express waiver by *Better Homes and Gardens*

17

of any performance or default of Affiliate shall be construed as a waiver of any other or any future obligation or default.

25.    **Notices.** Any notice herein provided for shall be in writing addressed to *Better Homes and Gardens* at the address shown on page one of this Contract or to Affiliate as follows:

> 443 East Central Street, Box 283
> Franklin, MA 02038

26.    **Term and Renewal.** The term of this Contract shall be five (5) years. Affiliate may renew its Contract if notice of renewal has been given as provided below and subject to the following:

(a)    Affiliate is not in breach of this Contract.

(b)    Principal Member has renewed its Contract with *Better Homes and Gardens.*

Unless written notice of non-renewal is given to *Better Homes and Gardens* one hundred eighty (180) days prior to the date of expiration of this Contract, Affiliate, if not in breach, will execute a new Contract in the form then being offered by *Better Homes and Gardens.* The renewal contract may contain materially different terms than this Contract, including those which relate to fee amount, computation and payment, and will be supplemented by amendments to prior contracts which have not expired prior to the effective date of the renewal contract.

Within three (3) months of renewal, Affiliate shall send, at its expense, at least one key management representative to a Management Orientation Session at a site designated by *Better Homes and Gardens.*

If Affiliate continues to use the Marks after the expiration date of this Contract but has failed to execute a renewal Contract or provide notice of non-renewal to *Better Homes and Gardens,* Affiliate will be deemed to be operating on a month-to-month basis under the terms and conditions of the renewal Contract offered Affiliate by *Better Homes and Gardens.* In the event Affiliate desires to terminate its relationship with *Better Homes and Gardens* after expiration of this Contract but prior to executing a renewal Contract, Affiliate shall be required to give *Better Homes and Gardens* 180 days' written notice thereof and during the 180 day period Affiliate will be deemed to be operating the terms and conditions of the renewal Contract offered Affiliate by *Better Homes and Gardens.*

If Affiliate fails to execute a renewal contract and pay the renewal fee as provided in Section 9(g) within thirty (30) days after the renewal date, *Better Homes and Gardens* may, at its option and upon thirty (30) days' notice, terminate Affiliate. If local law requires notice to Affiliate prior to termination, this Contract shall remain in effect on the month-to-month basis specified in the preceding section until the necessary notice has been given. In lieu of termination, but without waiving its right to terminate the Contract, *Better Homes and Gardens* may, at its option, suspend Affiliate's open account privileges, accelerate the balance due upon any payment plan or promissory note Affiliate might have with *Better Homes and Gardens* and/or suspend referrals to Affiliate as provided in Section 13(d).

27.    **Date**.    The parties intend that this Contract be executed and effective on April 24, _____, 2000 .

The parties agree the planned Opening Date (Renewal Date) is the 1st day of N/A _____, _____. The Opening Date is defined as the date when Affiliate first uses the *Better Homes and Gardens* Marks or the 120th day after the date this Contract is effective, whichever is earlier. In the event the actual Opening Date is different from that specified above, any payment plans based on the specified date will not change and anniversaries of the specified date will determine the start of each contract year for the purpose of computing Transaction Fees and Advertising & Sales Promotion Fees as provided in Sections 9(b) and 9(c), respectively. If Affiliate is signing this Agreement for a renewal term, the "Opening Date" specified here will be the date used to determine the start of each contract year during the renewal term.

**IN WITNESS WHEREOF**, the parties have executed this Contract.

**GMAC HOME SERVICES, INC.**                      Costello Realty, Inc.
                                                          [Name of Affiliate]

By: _____               By: _____
                                             (Signature of owner, partner or officer)

Title: _____            Title: _____

Date: April 25, 2000                       Date: 5/4/00

19

Contract #81

## ENDORSEMENT OF PRINCIPALS/SHAREHOLDERS

Each of the principals or shareholders identified in Section 16(b) hereby execute this Contract for the limited purpose of being personally bound by the provisions of Sections 4, 5, 7 and 16 of the Contract.

_____    Date:_____
Paul K. Costello

_____    Date:_____

_____    Date:_____

_____    Date:_____

_____    Date:_____

_____    Date:_____

_____    Date:_____

20

## EXHIBIT E-1

## ADVERTISING AMENDMENT

(Effective)
The parties to the Real Estate Service Affiliate Contract dated April 24 , 2000  (the "Contract") and Carlson Real Estate (the Principal Member under the Contract) agree to amend the Contract as follows:

1.    Principal Member will administer an institutional Advertising and Sales Promotion Fund within the area in which it and Affiliate are located. This fund will conduct local institutional advertising bearing the *Better Homes and Gardens* Marks within the ADI on behalf of Principal Member and its affiliates.

2.    Affiliate shall pay to *Better Homes and Gardens* the amount of Advertising & Sales Promotion Fee specified in Section 9(c) of the Contract. *Better Homes and Gardens*, Affiliate and Principal Member agree that an amount equal to _75_ percent of the Advertising & Sales Promotion Fees paid by Affiliate shall be paid by *Better Homes and Gardens* to the institutional Advertising and Sales Promotion Fund administered by Principal Member.

3.    The parties agree that, as between *Better Homes and Gardens* and Principal Member, Principal Member shall be responsible for proper expenditure of monies paid into the institutional Advertising and Sales Promotion Fund. Principal Member agrees to communicate the overall advertising and sales promotion plan and render an annual accounting of fund receipts and expenditures to its affiliates.

**GMAC HOME SERVICES, INC.**

By: _____
Title: _____
Date: April 25, 2000

**AFFILIATE:** Costello Realty, Inc.

By: _____
Title: _____
Date: _____

Carlson Real Estate
(Principal Member)

By: _____
Title: _____
Date: _____

4/99

**EXHIBIT B**

# Contract Amendment

GMAC Real Estate, LLC d/b/a *GMAC Real Estate* of 477 Martinsville Road, Liberty Corner, New Jersey 07938 (herein referred to as *"GMACRE"*), and Affiliate, parties to the *GMACRE* franchise agreement (the "Contract") agree as follows:

**1.     Transition Assistance.**     *GMACRE* will provide materials and funds for Affiliate to convert its identity to *GMAC Real Estate* from *Better Homes and Gardens*. To receive the assistance, Affiliate must:

1. Be current on all financial obligations to *GMACRE*.

2. Execute a *GMACRE* franchise agreement and the *"Conversion Costs Note"* for the amount stipulated herein.

3. Order products through *GMACRE* Marketing Services department from approved suppliers and vendors.

**2.     Amount of Compensation.** The amount of compensation is prescribed by guidelines related to the size and style of exterior office signage, quantity of active residential property listings, and the number of real estate sales professionals associated with Affiliate. Based on these factors, *GMACRE* will finance $5,152.50 for Affiliate to purchase identity materials, bearing the *GMAC Real Estate* trademark.

**3.     Forgiveness of Indebtedness.**     *GMACRE* will amortize the amount in Paragraph 2 above, along with the shipping charges and applicable sales tax at an equal monthly rate. In the event Affiliate terminates the Contract or is terminated by *GMACRE* for material breach of the Contract, any unamortized amount shall become due and payable immediately to *GMACRE*.

**4.     Term of the Contract.**     The provisions of Section 26 of the Contract notwithstanding, the parties agree that the term of the Contract shall be extended to September 1, 2005, and Affiliate's Anniversary Date will remain as the 1st day of September.

IN WITNESS WHEREOF, the parties execute the Amendment, intending it to be effective on April 24, 2000.

*GMAC* **Real Estate**                                      Costello Realty, Inc.

By _____                    By _____

Date   April 25, 2000 _____              Date _____

*Transit.doc 12/09/99*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS
CASE NO. 05C0573

GMAC Real Estate LLC        )
                            )
              v.            )        AFFIDAVIT OF PAUL COSTELLO
                            )
Costello Realty, Inc.       )

I, Paul Costello, do hereby state that to the best of my knowledge the following is

true:

1.   That I am President and Sole Shareholder of Richard F. Costello Realty,

     Inc. d/b/a Costello Realty, Inc.;

2.   That on or about May 4, 2000, I executed a contract on behalf of Costello

     Realty, Inc. with GMAC Home Services, Inc.. With regard to this contract

     I negotiated its terms and executed this contract while in the

     Commonwealth of Massachusetts.

3.   That Costello Realty, Inc. provides real estate brokerage services in the

     Commonwealth of Massachusetts, and does no business whatsoever in the

     State of Illinois.

4.   That at the time I executed the above-described contract I had no intention

     of doing any business in the State of Illinois, and by using the services

     provided to me in Massachusetts by GMAC Home Services, Inc. I had no

EXHIBIT
2

reason to believe that I would be required to litigate any dispute in the State of Illinois.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 17th DAY OF FEBRUARY, 2005.

_Paul Costello_

Paul Costello

## AFFIDAVIT OF SERVICE

I, Donna Murphy, hereby state under oath that I caused a copy of **Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Memorandum in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction** to be hand delivered on this 2nd of March, 2005 addressed to:

> Catherine Burkhardt, Esq.
> DLA Piper Rudnick Gray Cary
> 203 North LaSalle Street
> Suite 1800
> Chicago, IL  60601

Donna Murphy

SUBSCRIBED AND SWORN
to before me this 2nd day of
March, 2005.

Notary Public

"OFFICIAL SEAL"
KAREN M. SMUDA
Notary Public, State of Illinois
My Commission Expires April 8, 2008